### Case No. 16,624.

#### UNITED STATES v. VINTON.

[2 Sumn. 299.] [2]

Circuit Court, D. Maine. May Term, 1836.

##### ARMY—BREVET RANK—RETROACTIVE COMMISSION—PAY AND EMOLUMENTS.

1. The defendant, being a lieutenant in the army of the United States, was commissioned

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Charles Sumner, Esq.]

June 30th, 1834, as a captain by brevet, to take rank from September 30th, 1829. *Held*, that the commission took effect retroactively, and that the defendant was entitled to receive the pay of a captain by brevet, for services rendered as captain, after the date last above mentioned.

2. Where a brevet commission in the army of the United States is conferred upon a party, to take rank from a prior date, the pay and emoluments of the rank conferred follow as an incident from this date, whenever the party has rendered services according to that rank.

Assumpsit on an account annexed and for money had and received. The cause came on to be heard upon an agreed statement of facts, which was as follows: This is an action of assumpsit, brought by the United States against Captain [John R.] Vinton, and at his request, to test the validity of his claim to certain brevet pay, to recover two hundred and four dollars, which sum was drawn by him from the paymaster, but disallowed at the treasury; and the parties agree to the following statement of facts: The defendant was commissioned first lieutenant in the United States army, on the 30th of September, 1819, and served under the said commission until the 30th of June, 1834, when he was commissioned a captain by brevet, to take rank from the 30th of September, 1829. During the periods for which he claims the additional, or brevet pay of ten dollars per month, viz. from the 16th of September, 1830, to the 31st of August, 1831; from the 1st of October, 1831, to the 21st of February, 1832; and from February 26th to July 4th, 1832, he had a captain's command. The question for the court is: Did this brevet commission, made and conferred on the 30th of June, 1834, to take rank from the 30th of September, 1829, authorize the defendant to receive brevet pay for services performed in 1830–'31 and '32. If the defendant was, by said brevet, so authorized, then the plaintiffs are to take nothing by their writ; otherwise the defendant is to be defaulted, and judgment rendered for the plaintiffs for the sum demanded, and costs.

Mr. Anderson, U. S. Dist. Atty., argued as follows: By act of congress of July 6, 1812, c. 37, § 4 [2 Stat. 784], the president is authorized to confer brevet rank on such officers of the army as shall distinguish themselves by gallant actions, or meritorious conduct, or who shall have served ten years in any one grade: provided, that nothing herein contained shall be so construed as to entitle officers so brevetted to any additional pay or emoluments, except when commanding separate posts, districts, or detachments, when they shall be entitled to, and receive the same pay and emoluments which officers of the same grades are now, or hereafter may be allowed by law. By act of April 16, 1818, c. 64 [3 Stat. 427], "officers of the army, who have brevet commissions, shall be entitled to and receive the pay and emoluments of their brevet rank when on duty, and having a command according to their brevet rank, and at no other time." By act of March 16, 1802, c. 9, § 20 [2 Stat. 136],

"every officer and soldier shall take and subscribe the oath to bear true allegiance" to the country, &c., which oath is required of every soldier on his enlistment, and of every officer on his accepting his appointment. As every promotion is a new appointment (Marbury v. Madison, 1 Cranch [5 U. S.] 16), the defendant could not act officially under his brevet commission until he had taken and subscribed the oath required by law. The defendant's commission was made and completed on the 30th of June, 1834, to take rank from the 30th of September, 1829; subsequent, of course, to which time he took and subscribed the oath by law required, to authorize him to act under or by virtue of the said commission. The services for which the defendant received pay, rendered, as he maintains, under this brevet commission, were performed between the 16th of September, 1830, and the 4th of July, 1832, two years before this brevet commission was made. Can it be maintained, that the defendant acted under and by virtue of this commission, two years before such commission was in existence? He could not perform the service both under his old commission of lieutenant and under his brevet commission of captain at one and the same time. He acted under one or the other of these commissions. If he performed the service under his old commission, he is, clearly, not entitled to pay for this service under the brevet or new commission. A new commission to do the same thing, determines the old commission. Jacob's Law Dict. tit. "Commission." When did this new commission determine the old commission? When, as regards pay and emoluments, the defendant accepted it, and took and subscribed the oath necessary to qualify him to act under the new commission and not before. Then, as the defendant was not qualified to act under this brevet commission; for it was not made or conferred until long after the services in question were performed, he did not perform them by virtue of any power or authority derived from this commission, and cannot claim the increased pay given by this commission for like services. But even if acceptance and the taking the oath of allegiance should not be deemed indispensable; yet the brevet commission could not determine the old commission, until such brevet commission was completed by the signature of the president, and this was two years after the services were performed.

In Marbury v. Madison, it is said, "the applicant has a right to the office or to nothing. He will obtain the office by obtaining the commission, or a copy of it from the record." In the case of Marbury, the officer was nominated, confirmed, and his commission made and completed; yet he could not act in his official capacity, until he received his commission or a copy of it, and was duly qualified under such commission or copy, by taking the qualifying oath. Had Marbury assumed to act as a magistrate before he

had obtained his commission, or a copy of it, and before he had taken the requisite qualifying oath, would such acts have become legal and valid, by his subsequent possession of the commission and a subsequent qualification to act under it? Could Marbury have enforced the payment of fees for such assumed official acts, by the production of a commission bearing date before, but under which he was not qualified to act, until after the services were performed? If not, how can the defendant claim this money, when even his commission was not made until long after the performance of the service for which he received the money? The act of congress contemplates services to be performed, and not services already rendered. "Officers who have brevet commissions, shall be entitled to receive the pay and emoluments of their brevet rank, when on duty and having a command, according to their brevet rank, and at no other time;" but should the construction contended for by the defendant prevail, so as to cover past services, he will receive pay for "time other" than when he held such brevet commission. By the act of 1812 (chapter 137, § 4), the president is authorized to confer brevet rank; and by the act of 1818 (chapter 59, § 2), "no brevet commission shall hereafter be conferred without the advice and consent of the senate." As it is not imperative on the president to nominate, or on the senate to confirm, this brevet might have been delayed twenty years, and then defendant might have been brevetted a colonel, to take rank ten years prior to the date of his commission. Could the defendant, under such circumstances, go back with his account, and charge pay and emoluments as a colonel for such periods as he, as a lieutenant in fact, might have been left in command of a separate post? Brevet rank is not conferred on officers of the navy; but, to reward gallant deeds, commissions are often conferred, to take rank from an anterior day. Suppose a lieutenant had taken command of the ship, his captain being sick or disabled, and for his gallant conduct in action he should subsequently be made a captain, to take rank on the day of the action in which he distinguished himself, could he go back, and draw pay and prize money as a captain? By article 75 of the rules and articles for the government of the army (Act 1806, c. 20 [2 Stat. 368]), "no officer shall be tried but by general court-martial, nor by officers of inferior rank, if it can be avoided." Suppose the officers composing a court-martial, to try a colonel, were all of inferior rank, while a court might, without difficulty or delay, have been organized, composed of officers of the rank of the accused, as required by law; and the accused should object to a confirmation of the sentence of such court, for this reason; but before a decision was made upon the objection to the confirmation of the sentence, the officers objected to, on account of

their inferior rank, should receive commissions of colonels, to take rank prior to the organization of said court-martial, would these subsequent commissions cure the defect? If not, then can a subsequent commission give a right to increased pay for past acts, when it cannot confer the increased power to do those acts, or rather to make those acts valid. The case of Captain Bache, of the army, was in all respects like the one under consideration. The attorney general, to whom that case was submitted, in his official opinion, given on the 5th of January, 1835, says: "To come within the law of 1812, the officer must have been brevetted; and to be included in that of 1818, he must have a brevet commission. Captain Bache's rank having been carried back to a date prior to the period for which he now asks brevet pay, he would seem to have an equitable claim for the difference charged by him, but his only remedy is by application to congress." By the act of 1812 (chapter 37), officers, who have served ten years in one grade, may be brevetted. The only object and intent of conferring rank anterior to the date of the commission is, evidently to decide the officer's relative place and command among his brother officers, and to fix the beginning of another ten years, when he may, by the act, receive another brevet; otherwise a commission would have said to take pay as well as rank from an anterior day. Congress evidently intended, by the act of 1818, by requiring the consent of the senate to these appointments, to guard not only against too great an increase of these commissions, but also against increase of pay under them, by expressly refusing pay, except when the command was according to the rank. The words of the act are too plain and unambiguous to admit of a doubt as to the intention of congress, and it is contended that the United States must prevail, unless by construction the defendant shall be made to have held this brevet commission two years before it was made, and when in truth and in fact he held no such commission.

Vinton, pro se, argued as follows: The question seems principally to turn upon the single point, whether the validity of any commission takes origin from its date, or from some other period. The attorney general of the United States is of opinion, that in the case of a brevet commission, and with regard to the pay and emoluments pertaining to it, this period is "when it is conferred." But the law is simply declaratory of the privileges and restrictions of brevet rank. The phrase, "officers who have brevet commissions," seems to be only another mode of saying, officers with brevet rank; captains by brevet, or majors by brevet, &c. &c.; and could not have been meant to imply, that in order to ensure to an officer the emoluments of his brevet rank, he must necessarily have the parchment commission in his pocket. There is nothing, in a fair reading of the law, however certain passages may be emphasized, which places brevet commissions on any ground distinct from other commissions, with respect to the date and origin of the immunities conferred by them.

The decision of the attorney general is unprecedented. Repugnant as it is to the feelings of the defendant to appear as a controvertist with his government, yet it cannot be surprising, that he should appeal from a judgment at variance with all former decisions, opinions and usages, which have prevailed, both in the army and in the departments at Washington, in similar cases. The rule has hitherto been, invariably, that all the immunities of a commission have their initial virtue from its date. The immunity of rank is explicitly declared to obtain from its date upon the face of the instrument, and if it were usual to discuss the matter of pay in such a document, it can scarcely be doubted, that it would be made to correspond. The time of a commission being "conferred," or issued has always been considered as a matter of little or no importance. By confirming an appointment with an anterior date, it is a virtual acknowledgment, that it ought to have been conferred at that date. Commissions of all kinds must necessarily be dated back. No one can be nominated, confirmed, and have his commission executed, on the day it falls due. Every advantage of the back date has therefore always been conceded. Whenever in the ordinary course of service, an officer is promoted to an advanced grade, he draws the difference of pay, on the first official announcement of the promotion, though the confirmation of it could not take place until a subsequent period. Some thirty brevet second-lieutenants are annually appointed in July, who are not confirmed until the ensuing session of congress; yet they receive the pay of their brevet rank for the intervening time, although, in the view of the attorney general, they are not then "brevetted," and have not a "brevet commission." In every instance, of civil or diplomatic appointment, the same usage is believed to prevail.

In the view of right and justice, even the attorney general admits, that the defendant has an "equitable claim." The law evidently intended to confer additional emolument for additional service rendered. It is not denied, that its requisitions, in this respect, were fulfilled. The law guarantees brevet promotion, after ten years faithful service in one grade. It is not denied, that this probation was accomplished. The commission was, therefore, executed and delivered, conferring rank from a date strictly conforming to the period when it became due. The senate, for purposes of their own, deferred action on its confirmation, but not, it is presumed, with any design to deprive it of its immunities. On the contrary, by dating it back, they virtually acknowledged and sanctioned the period at which it should have been conferred, and from which all its immunities should date. If any wrong ensue from the delay, the government

cannot justly take advantage of that wrong to the prejudice of the citizen.

It may be fairly concluded, then, that unless the law has expressly declared, that the emoluments due under a brevet commission are to be allowed only from the time of its confirmation by the senate, or its promulgation by the executive; unless brevet commissions are in this manner to be explicitly excepted from the general and prevailing rule in regard to other commissions, all the immunities pertaining to them should be coeval. The law has made no such express exception. Consequently the pay drawn by the defendant as brevet captain, "having a command according to his brevet rank," was due to him under the statute, and should be allowed at the treasury.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. The defendant, Captain Vinton, appears, by the statement of facts, to have been commissioned as a lieutenant in the army on the 30th of September, 1819; and he served under that commission until the 30th of June, 1834, when he was commissioned by the president, by and with the advice and consent of the senate, as a captain by brevet, to take rank from the 30th of September, 1829, the time when his ten years' service expired. He claims, and has received, the additional pay of ten dollars per month, as captain by brevet, for different periods of time between September, 1830, and July, 1832, during which periods he had the command of a captain by brevet. The United States insist, that this additional pay has been received and retained against law. And the question now is, whether Captain Vinton has rightfully received it, and can rightfully retain it, according to the existing laws on this subject. The act of July 6, 1812 (chapter 37), provides that the president shall be authorized "to confer brevet rank on such officers of the army as shall distinguish themselves by gallant actions, or meritorious conduct, or who shall have served ten years in any one grade." The act of April 16, 1818 (chapter 64), provides "that the officers of the army, who have brevet commissions, shall be entitled to and receive the pay and emoluments of their brevet rank, when on duty, and having a command according to their brevet rank; and at no other time." It is plain that the additional pay and emoluments of brevet rank cannot be claimed, until the party has received his brevet commission, and is properly qualified to act under it. And if there were nothing more in the present case, there would be no room for doubt or controversy. But the true question here is, not whether the party must have a brevet commission (for Captain Vinton has that); but whether his commission takes effect only from its actual date; or, by relation back, takes effect at and from the 30th day of September, 1829, from the terms in the commission, that he is thereby "to take rank from the 30th of September, 1829." If it is to take effect from this last period as

to rank, it is difficult to perceive, why the pay and emoluments of the rank do not follow the rank itself, according to the provisions of the act of 1818 (chapter 64).

It has not been denied, and, indeed, it is tacitly admitted by the argument, that the president, by the advice and consent of the senate, has authority to confer brevet rank from a period antecedent to the actual appointment and commission. That point, therefore, is fairly out of the case; and, indeed, we must admit, that Captain Vinton was regularly and honorably entitled to the rank from such antecedent period, since it was actually conferred upon him by the proper authority.

It appears to me, that the commission does not take effect solely from and after its date; but in this instance retroactively, it has effect from and relation to the 30th of September, 1829. I hold this to be the natural, nay, the necessary construction of the words of the commission. Unless this construction is given to the instrument, we in fact strike out of it the words, "to take rank from the 20th of September, 1829," a liberty, which no court of justice can be justified in assuming. If the words, then, are to have any meaning, they confer on Captain Vinton the brevet rank of captain from that time. If they confer on him that rank from that time, then they confer on him also the pay and emoluments of that rank, when he is on duty, and has a command according to that rank, from and after that time. It seems to me, that the pay and emoluments are necessarily attached to the rank; and that if the rank existed from September, 1829, and the duty and command also existed, then the pay and emoluments followed of course. It is admitted, that, in equity, he ought to receive the pay and emoluments; and I think, he is equally so entitled at law, upon the plain intent of the commission, and of the act of congress regulating the pay and emoluments.

The whole argument, on behalf of the United States, rests upon the ground, that the commission can operate only from and after its date, to confer brevet rank and pay in futuro. But the very terms of the commission contradict that, as to rank; and if so, where is the ground for a distinction between the rank, and the pay and emoluments? The act of congress states none. The commission states none. I confess myself unable to find any. If we construe the commission as a commission creating Captain Vinton a captain by brevet from the 30th of September, 1829, the whole difficulty in the case vanishes. If we adopt any different construction, we reject the words of the instrument, or we deny them any meaning. They become, vox et praeterea nihil.

Having said thus much, the subject is, with me, exhausted. My judgment is, that the United States ought to take nothing by their suit, and that judgment ought to be entered for the defendant.

The district judge concurs in this opinion; and therefore let judgment be entered accordingly.